# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SYDNEY H. ROTH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 17 C 50196 |
| v. ) | |
| ) | Magistrate Judge |
| NANCY A. BERRYHILL, Acting ) | Iain D. Johnston |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Sydney H. Roth ("Plaintiff") claim for Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's memorandum, which this Court will construe as a motion for summary judgment, (Dkt. 10), is **denied** and the Commissioner's memorandum, which this Court will construe as a cross-motion for summary judgment, (Dkt. 15) is **granted**.

In this case, Plaintiff presented no medical opinion after the alleged onset date to support her positions. Instead, Plaintiff requests the Court reweigh facts and reach a conclusion contrary to the decision, relying primarily on medical records preceding her disability onset date without any explanation why the Court should consider those records. Plaintiff's request would require this Court to play doctor, which it will not do. It was Plaintiff's burden to present medical opinions supporting her position and develop legal arguments as to why the decision was erroneous. Plaintiff did neither.

# I. BACKGROUND

**A. Procedural History**

Plaintiff filed her application on October 11, 2013, alleging disability beginning on July 21, 2011.  R. 270-80.  Plaintiff's application was denied initially and on reconsideration.  *Id*. at 109-120, 123-141.  On February 4, 2016, Plaintiff, represented by an attorney, testified at a hearing before an Administrative Law Judge ("ALJ"). *Id*. at 44-108.  The ALJ also heard testimony from Dr. Allen W. Heinemann, Ph.D., a medical expert ("ME"), and Linda M. Gels, a vocational expert ("VE").  *Id*.

At the hearing, Plaintiff amended her alleged onset date back over two years – to October 11, 2013.  R. 18. Plaintiff was 22 years old at the time of the hearing.  She testified that she lived with her mother, but she was capable of living on her own. (R. 58.) Plaintiff testified that she wished to work, but that her anxiety and gastrointestinal impairments kept her from working. (*Id.* at 63.) When asked about her gastrointestinal impairments, she testified that she has diarrhea every day for two to four hours when she wakes up. (*Id.* at 65.) She stated that this was due to a medication she was taking to help with her chronic constipation. (*Id.*) When asked about her anxiety, she stated that at one of her previous jobs, she relied on a friend staying with her at work to help her.  (*Id.* at 66.)  She testified to having panic attacks three to four days a week, and she would have one or two attacks on those days. (*Id.*) She testified to having anxiety and panic attacks about needing to use the bathroom due to her diarrhea and not being able to find someone to cover for her. (*Id.* at 71.) She also testified to struggling to get out of bed or leave the house.  (R. 75.) She stated that she has to bring a friend to go grocery shopping.  (*Id.*) She stated that on her hardest days, she could follow a TV program, but that she could not read due to lack of focus and attention. (*Id.* at 77.)

Plaintiff testified to trying to kill herself by driving her car into a tree after she caught her boyfriend cheating on her in March of 2013. (R. 82-83.) In the accident, she shattered her foot and often still wears a brace on that foot. (*Id.* at 83.) She also testified to using marijuana three times a week to help with her stomach pain. (*Id.* at 85.) She testified as to having too much anxiety to cancel her therapy sessions if she was ill, and that she quit seeing one therapist due to a breach in confidentiality by the therapist. (*Id.* at 87.)

The ME, Dr. Heinemann, testified that Plaintiff's anxiety disorder was her most limiting mental disorder, but that her mood disorder, bipolar, also contributed. (R. 91.) He found that she had mild limitations in activities of daily living and moderate limitations in social functioning. (*Id.* at 92.) He stated that her anxiety would limit her interactions with the general public, but that it was not as limiting as she alleged at the hearing. (*Id.*) Dr. Heinemann found that due to Plaintiff's anxiety, her concentration, persistence, or pace was moderately limited. (*Id.* at 95.) He stated that she would need to be limited to occasional and superficial interactions with the general public. (*Id.*) He also found that she would not be limited in problem solving, but that she could not work a job which had a strict production quota or a regularly scheduled quota. (*Id.*) He did find, however, that she could work a job with a production quota if it were over the course of a shift where she could vary her pace. (*Id.* at 96-97.) He did not see a need to limit her to simple or routine tasks, as she could handle detailed, but not complex tasks. (*Id.*) He also stated she could maintain adequate interaction with supervisors and co-workers, and that she could handle occasional routine work place changes. (*Id.*) The ME specifically stated that he believed Plaintiff's interaction with the public is what caused her anxiety and forced her to miss work, so limiting her interaction with the public would accommodate her anxiety. (*Id.* at 98.)

An impartial VE, Linda Gels, also testified at the hearing. (R. 101.) The ALJ asked the VE to consider a hypothetical individual of Plaintiff's background who was limited to light work but could frequently climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds; could frequently balance, stoop, crouch and crawl; could have occasional incidental interaction with the general public with no problems solving tasks in a low stress work environment with no fast-paced production rate or strict production quota requirements; no complex task or complex reasoning, but could perform routine, moderately detailed tasks; could sustain adequate interaction with co-workers and supervisor; and could adapt to occasional routine work place changes. (*Id.* at 102-03.) The VE testified that such an individual could work as a cleaner/housekeeper, an office helper, or a mail clerk. (*Id.*) The ALJ then asked the VE to keep the same hypothetical, but to limit the person to sedentary work. (*Id.*) The VE stated that such an individual could work as a document preparer, inspector, or touch-up screener. (*Id.*) The ALJ then asked the VE to go back to the original hypothetical but limit the individual to simple, routine tasks. (*Id.* at 104.) The VE stated that her answer regarding the first hypothetical's jobs would not change. Finally, the VE testified that if Claimant were to be off tasks for more than 15% of the work day or were to miss two or more days of work per month, there would be no competitive work available. (*Id.*)

On April 25, 2016 the ALJ issued a written decision finding that Plaintiff was not disabled. R. 18-32. On May 4, 2017, Plaintiff's request for review by the Appeals Council was denied, making the ALJ's decision the final decision of the Commissioner. R. 1-7. This action followed.

**B. ALJ Decision**

On April 25, 2016, the ALJ issued an unfavorable decision. R. 18-32. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. R. 20. At step two, the ALJ found Plaintiff suffered from severe impairments of anatomical bowel dysfunction and bowel disease, history of right calcaneus fracture, status post open reduction and internal fixation, anxiety-related disorder, mood/bipolar disorder, attention deficit hyperactivity disorder ("ADHD"), and cannabis use disorder. *Id*. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526). *Id.* at 21.

Before step four, the ALJ found that she had the residual functional capacity ("RFC") to perform work at a light exertional level as defined in 20 C.F.R. 416.967(b), except for the following limitations: she could frequently balance, stoop, crouch, crawl and climb ramps and stairs, occasionally limb ladders, ropes and scaffolds; occasional, incidental interaction with the general public with no problem-solving tasks; low stress work environment; no fast-paced production rate or strict production quota requirements; no complex tasks or complex reasoning but can perform routine, moderately detailed tasks; can sustain adequate interaction with coworkers and supervisors and can adapt to occasional routine workplace changes. R. 24. At step four, the ALJ concluded that Plaintiff has no past relevant work. *Id*. at 30. At step five, the ALJ found Plaintiff could perform other work, including cleaner/housekeeper, office helper, mail clerk. R. 31. Because of this determination, the ALJ found that Plaintiff was not disabled under the Act. *Id*.

## II. DISCUSSION

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial evidence). A reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Moreover, federal courts cannot build the logical bridge on behalf of the ALJ. *See Mason v. Colvin*, No. 13 C 2993, 2014 U.S. Dist. LEXIS 152938, at *19 (N.D. Ill. Oct. 29, 2014).

On appeal, Plaintiff argues that reversal or remand is appropriate for three reasons. First, Plaintiff argues that the ALJ did not account for portions of evidence from before the alleged onset date. Second, Plaintiff alleges that the ALJ's RFC for Plaintiff's mental impairments is unsupported by substantial evidence. Finally, Plaintiff contends that the ALJ's RFC with regards to Plaintiff's gastrointestinal impairments is not supported by substantial evidence.

Before addressing Plaintiff's arguments, the court notes that Plaintiff's arguments are not developed. Plaintiff merely makes a long list of evidence from the record, without providing any analysis, arguments, or case law to support her position that the ALJ's decision requires remand. ALJs are not required to address every piece of evidence. *Diaz v. Chater,* 55 F.3d 300, 308 (7th Cir. 1995). They must only articulate their analysis so as to build an accurate and logical bridge from the evidence to their findings and conclusions. *Shramek v. Apfel,* 226 F.3d 809, 811 (7th Cir. 2000). A memorandum containing only a listing of evidence not specifically addressed by the ALJ fails to present an issue on review. Plaintiff was required to build her own logical bridge to connect the omitted evidence and the requirement of the ALJ to address the evidence, and she failed to do so here. The court should not be required to construct her argument for her. Nevertheless, the court will attempt to address any argument that can be construed from Plaintiff's list of evidence.

**A. Limiting the Evidence to the Relevant Time Period**

First, construing Plaintiff's list of evidence as an argument, it appears that Plaintiff alleges that the ALJ ignored and omitted evidence in writing his decision. ALJs do not need to address every piece of evidence, so long as they establish a logical bridge between the evidence and their conclusion. *Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017). Here, the ALJ addressed the evidence that Plaintiff seems to imply he ignored. In his decision, the ALJ stated that "[t]he voluminous record associated with this claim is somewhat misleading in that the vast majority of the medical records pertain to the claimant's medical treatment prior to age 18. Treatment since age 18 has been rather inconsistent and marked by noncompliance." (R. 25.) Plaintiff's alleged onset date in October 11, 2013, at which time she was 20 years old. (Remember that Plaintiff had previously alleged an onset date of July 21, 2011, but amended it.) Plaintiff's memorandum mostly addresses evidence before the alleged onset date, which is odd in light of the amendment to the

7

onset date. Plaintiff offers no analysis or argument for why evidence before her alleged onset date was relevant to the ALJ's decision. The Plaintiff failed to do so even in her reply brief after the Commissioner noted flagged the issue. Nevertheless, the ALJ did not ignore relevant evidence; rather, he noted that a large portion of the record consisted of evidence outside the relevant time period. Plaintiff has failed to provide analysis or legal or factual argument for why the ALJ should have treated the evidence differently. The rest of the evidence cited by Plaintiff includes information that the ALJ accounted for in his decision. Although Plaintiff may not agree with the ALJ's decision regarding how he viewed the evidence, the ALJ addressed the evidence in his decision and built a logical bridge from the evidence to his conclusion. Again, Plaintiff does not provide any analysis, and seems to be asking the court to reweigh medical evidence and come to a different conclusion. The court will not reweigh evidence. *Pepper v. Colvin,* 712 F.3d 351, 362 (7th Cir. 2013). The Court upholds the ALJ's decision to focus on evidence within the relevant time period.

**B. Mental RFC**

Once again, Plaintiff's memorandum for this heading is devoid of legal or factual argument, and instead relies on a list of evidence pertaining to Plaintiff's alleged mental health limitations. Most of this evidence, as explained above, addressed matters before the alleged onset date. And again, Plaintiff failed to establish why the ALJ should have considered this evidence. However, some evidence Plaintiff lists is after the onset date. She alleges that the ALJ ignored this evidence as well. For example, Plaintiff discusses panic attacks after her mother moved away, a panic attack during a behavioral health assessment, weight loss, chronic constipation, and anxiety. But the ALJ discussed all of these issues, finding that Plaintiff's mental health examinations showed appropriate mood and affect without anxiety, that Plaintiff had an ability to

complete activities of daily living, a lack of medical treatment, gaps in medical treatment, failure to follow up on recommendations from her doctors, medical improvement on medication, and a failure to report her extreme anxiety to her medical providers. (R. 27-28.) Plaintiff again seems to allege that the ALJ mis-weighed the evidence, but she does not provide any legal or factual argument for how the ALJ's decision is not supported by substantial evidence. The ALJ properly discussed the evidence Plaintiff lists in her memorandum, and he supported his decision with other evidence in the record. This court will not reweigh the evidence listed by Plaintiff.

Moreover, the ALJ properly relied on the opinion of the ME in creating the RFC. ALJs should determine Paragraph B limitations using an expert opinion, which the ALJ properly did here. *Richards v. Astrue*, 370 Fed. Appx 727, 730 (7th Cir. 2010). Plaintiff does not point to or offer any other medical opinion that provides a more limiting mental RFC or more limiting Paragraph B limitations than the one provided by the ME. The ALJ also did not ignore Plaintiff's mental impairments. In fact, he relied on the ME's opinion and found that Plaintiff should be limited to only occasional incidental interaction with the general public, no problem-solving tasks, a low stress work environment, no fast-paced production rate or strict production quota requirements, no complex tasks or complex reasoning, but could perform routine, moderately detailed tasks. (R. 24.) Although Plaintiff argues that the ALJ ignored the severity of her mental health impairments, the ALJ provided for her mental health impairments in the RFC. In sum, the ALJ properly supported his decision with substantial evidence and relied on the opinion of the ME in his determination.

**C. Physical RFC**

Finally, Plaintiff's remaining list of evidence centers around her gastrointestinal impairments. Plaintiff argues that the ALJ refused to consider Plaintiff's anatomical abnormality

that contributed to her gastrointestinal issues and that the ALJ failed to acknowledge that Plaintiff's anxiety interfered with her ability to submit to treatment. However, Plaintiff once again focuses on medical evidence before Plaintiff's alleged onset date without providing any analysis of the facts or the law outside of providing two case citations. Instead, she again merely lists evidence from the record. More importantly, the ALJ considered Plaintiff's anatomical abnormality and found it severe, but he noted that Plaintiff's symptoms had improved and she needed very little medical treatment after the alleged onset date for her gastrointestinal impairments. (R. 20, 22.) The ALJ also noted that any medical treatment she required only became necessary due to noncompliance with treatment or medication. (*Id.* at 22.)

Plaintiff also alleges the ALJ failed to account for her anxiety when noting she was noncompliant with treatment. Although it is true that the Seventh Circuit has stated that mental illness "may prevent the sufferer from taking his prescribed medicines or otherwise submitting to treatment," *Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006), the ALJ did not focus only on Plaintiff's lack of compliance with treatment. Instead, the ALJ looked to a variety of factors, including the fact that Plaintiff did not see her gastroenterologist for two years, that there is no medical evidence in the record for a thirteen month period, and that Plaintiff has had no medication changes. (R. 25.) The ALJ also found that although Claimant stated her medication caused severe symptoms, she did not see her specialist. (R. 25.) Finally, the ALJ noted that the intensity and chronicity of her symptoms were not consistent with her reports to medical providers. (R. 27-28.) Plaintiff makes no arguments regarding how the ALJ failed to account for her anxiety in noting her lack of treatment compliance. Instead, she focuses on evidence before the alleged onset date. The ALJ's credibility determinations are entitled to special deference. *Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010). The Seventh Circuit has stated that instead of picking apart the ALJ's

opinion, the court will give it a commonsensical reading. *Id.* Accordingly, courts reverse credibility determinations only if they are patently wrong. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). Plaintiff has not provided any argument or analysis to show that the ALJ's decision was patently wrong. As such, the court will affirm the decision of the ALJ.

### III. CONCLUSION

For the reasons stated in this opinion, Plaintiff's motion for summary judgment [Dkt. 10] is denied, and the Commissioner's motion [15] is granted.

Dated: November 21, 2018   By: _____
Iain D. Johnston
United States Magistrate Judge